IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JACK DAVID WAGNER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.04-839 |
| v. | : | |
| | : | |
| RIVERSIDE TOWNSHIP, RIVERSIDE | : | |
| TOWNSHIP POLICE DEPARTMENT, | : | OPINION |
| and PATRICK VACANTI, | : | |
| | : | |
| | : | |
| Defendants. | : | |

RODRIGUEZ, J.

     Presently before the Court are four motions: Defendant Riverside Township's motion for summary judgment, Defendant Patrick Vacanti's (hereinafter "Vacanti") motion for summary judgment, and Plaintiff Jack David Wagner's (hereinafter "Wagner" or "Plaintiff") two cross-motions to strike several exhibits used by both Defendants in support of their respective summary judgment motions. On November 1, 2007, the Court heard oral argument on the motions and issued the following rulings. First, Plaintiff's motions to strike all of the exhibits attached to both motions for summary judgment were GRANTED IN PART and DENIED IN PART; all of the exhibits with the exception of Officer Vacanti's training records were struck from Defendants' summary judgment motions. Second, John Does (1-5) and the Riverside Township Police Department were DISMISSED from the Complaint. The remaining issues were reserved for consideration and are addressed in this opinion. For the reasons that

1

follow, Riverside Township's motion for summary judgment is DENIED and Officer Patrick Vacanti's motion for summary judgment is DENIED.

## I. BACKGROUND

The underlying historical facts of this case are very much in dispute. On a motion for summary judgment, the case law directs the Court to consider the facts in a light most favorable to the non-moving party. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). Pursuant to that directive, the facts of this case are as follows.

On or about March 3, 2002, at approximately 6:15 in the evening, Plaintiff was walking towards Derby's bar in Riverside Township. Plaintiff's neighbors, Rhonda and Ronald Lallo (the "Lallos"), pulled their car up alongside the curb near Derby's and Plaintiff engaged them in conversation. Plaintiff was squatting, with his hands leaning on the open window on the passenger side of the car, which was occupied by Rhonda Lallo. A Riverside Township police cruiser, operated by Defendant Officer Patrick Vacanti, pulled up behind the Lallos' vehicle, prompting Wagner to comment "[w]hat the hell do they want?" As he spoke, he waived his arm in the air in the direction of the police cruiser. The parties dispute the nature of the comment, with Plaintiff and the Lallos suggesting that it was a nonthreatening statement made with a normal speaking voice and accompanied by a benign gesture and Vacanti contending that the comment was made with a screaming voice and a gesture intended to waive him off. Following the comment, Vacanti activated the overhead lights on the police cruiser, apparently to conduct a traffic stop of the Lallos' vehicle for illegal parking or obstructing traffic.

According to Plaintiff, Vacanti exited his police cruiser and repeatedly screamed at him to stand up. Plagued by an ailing back, Plaintiff told Vacanti of this injury,

attempted to obey his order, but was slow to rise.  Then, Officer Vacanti grabbed Plaintiff, pulled him up, and struck him in the knee with a metal object, later determined to be Vacanti's "ASP" baton.  Vacanti dragged Plaintiff towards the police cruiser, where Plaintiff was thrown onto the hood of the car, handcuffed, and placed in the back of the vehicle.  Plaintiff contends that during this course of events he repeatedly told Vacanti that he had a back injury, a contention endorsed by the Lallos.  Vacanti issued the Lallos a traffic ticket for illegal parking.[1]

Both Plaintiff and the Lallos contend that Vacanti tailgated the Lallos as they drove home until the police cruiser pulled in the parking lot of the Municipal Building.  Once in the parking lot, Plaintiff claims that he was dragged out of the car, causing further injury to his back.  In addition, Plaintiff alleges that he was not permitted to use the bathroom, he endured verbal assaults from various police officers, and that he was eventually taken to the hospital for evaluation.  Citations for aggravated assault of a police officer, obstruction of justice, resisting arrest and disorderly conduct were issued to Plaintiff, however, he states that all of these charges were administratively dismissed.  Coincidentally, Officer Vacanti was indicted on seventeen counts of criminal conduct related to this incident.  During oral argument, counsel for Vacanti advised that some of the charges against Officer Vacanti were downgraded and that, at trial, he was acquitted of all charges.

---

[1] The violation resulted from the vehicle's back end being approximately three feet from the curb while the front end was one foot from the curb.  The angled parking caused the back end of the vehicle to impede the flow of traffic on the one way street.  The Lallos paid the fine associated with the ticket.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### III.  RIVERSIDE TOWNSHIP

Plaintiff's Complaint alleges both common law and Constitutional claims against Riverside Township. Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  A Plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the Plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that Plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa, 891 F.2d 458, 464 (3d Cir. 1989)  Here, there is no dispute that Officer Vacanti was acting under color of state law because he was a police officer acting in the line of duty.  Thus, the Court must determine whether there was a Constitutional deprivation.

**A. Plaintiff's § 1983**

Summary judgment for Riverside Township is denied.  A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory.  Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind,  the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution

of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir.1984). Further, Plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom. Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "A showing of simple or even heightened negligence will not suffice." Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407, 117 S.Ct. 1382 (1997).

In Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990), the Third Circuit distinguished a "policy" from a "custom":

> "A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. Monell, 436 U.S. at 690, 98 S.Ct. at 2035 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970)). Accord Anela v. City of Wildwood, 790 F.2d 1063, 1067 (3d Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384."

Thus, a "custom" can be established by demonstrating a pattern of constitutional violations that the municipality is aware of, but has failed to take any measures to mitigate. Canton, 489 U.S. at 397, 109 S.Ct. 1197. It is not enough, however, to identify the custom, Plaintiff must also establish *scienter*, or knowledge of the policy maker of the illegal custom. See Simmons v. City of Philadelphia, 947 F.2d 1042, 1064-65 (3d Cir. 1991).

The sufficiency of evidence relating to a policymaker's awareness of a custom was addressed by the Third Circuit in Beck, 89 F.3d 966. In that case, plaintiff supplied

6

evidence of five civilian complaints of excessive force in less than five years as proof that the officer exhibited a pattern of violent and inappropriate behavior.  Pursuant to Fed.R.Civ.P. 50(a)(1), the District Court concluded that the evidence did not support a claim that the City had a policy or custom authorizing the use of excessive force and entered judgment in favor of the City, stating "[r]ecitation of the number of complaints filed is not sufficient to prove a policy or custom. [. . . ] I think [the] absen[ce of] any evidence of a less than meaningful investigation or less than meaningful response to complaints of excessive force is fatal." Beck, 89 F.3d at 973.  However, the Third Circuit reversed, stating "[o]n the contrary, the plaintiff offered in evidence a series of actual written civilian complaints of similar nature, most of them before and some after the Beck incident, containing specific information pertaining to the use of excessive force and verbal abuse by [defendant]." Id.  The Court noted that the civilian complaints "came in a narrow period of time and were of similar nature, [thus,] a reasonable jury could have inferred the Chief of Police knew, or should have known, of [defendant's] propensity for violence when making arrests."Id.

Here, Plaintiff claims that Riverside Township failed to adequately train its police department despite being on notice that its officers had a custom of using excessive force and violating the rights of its citizens.  As evidence thereof, Plaintiff offers two civilian complaints against Officer Vacanti and deposition testimony that demonstrates that either Officer Vacanti, or a fellow Riverside Township police officer[2], was the subject of a

---

[2] During his deposition, Officer Vacanti was questioned regarding his involvement in a civil rights lawsuit:
    Q.    And were you a party to the lawsuit?
    A.    I guess that's what would be considered.

federal civil rights litigation prior to the incident at bar. Specifically, prior to the underlying incident on March 3, 2002, Officer Vacanti was the subject of at least two citizen complaints of constitutional violations in August 2000 and July 2001 . (See O'Brien Cert., Exs. H, I) . Both complaints assert claims of excessive force during arrest. Investigation found one of the claims "not sustained" and another claim was abandoned by the complainant. Plaintiff has alleged that there was a third claim against Vacanti and that at least one of the claims was litigated. In addition, during his deposition testimony, Officer Vacanti acknowledged that he was involved in a civil rights litigation, but could not recall whether he participated as a witness or a defendant. (See id.) Finally, during oral argument, counsel for Plaintiff advised that Officer Vacanti and Riverside Township are parties to a number of litigations in this vicinage predicated upon illegal police conduct.[3]

Like the civilian complaints in Beck, the temporal proximity of the complaints against Officer Vacanti to the underlying incident involving Plaintiff is significant.

---

       Q.    Were you a defendant or a witness? If you remember.
       A.    I don't remember.
           *     *     *
Q. And was the case an allegation against members of the police department who, the accusation by Miss Johnson was that she was targeted by certain officers as a result of her marital problems with her husband who was a[n] officer. Is that what the case was, or was this another case?
       A.    I think that was the gist of it, yes.
(Deposition of P. Vacanti, attached to Avedissian Cert. as Exh. C, pgs., 6-7)

[3] Counsel claims that he became aware of the existence of these "litigations" during his preparation for oral argument. Counsel further stated that these revelations should not come as a surprise to Defendants, as defense counsel provided representation in those matters. Plaintiff did not move to supplement his opposition to the motions for summary judgment and Defendants both objected to use of the newly discovered evidence. Notwithstanding this evidence, the evidence submitted by Plaintiff is sufficient to withstand summary judgment.

Within the span of two years, Officer Vacanti was the subject of at least two civilian complaints, with similar underlying claims of excessive force and erratic behavior. Further, giving Plaintiff the favorable inference, Vacanti was a defendant in the civil rights litigation identified during his deposition.  Standing alone, there is sufficient evidence from which a reasonable jury could conclude that a custom, and knowledge of a custom, of violating the civil rights of the citizens of Riverside Township existed and that the Township was deliberately indifferent to that custom. See Berg, 219 F.3d 261, 276 ("The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice.")(citing Bryan County, 520 U.S. at 409, 117 S.Ct. 1382).

　　Riverside Township's arguments that the investigations had integrity and that the findings and conclusions of those investigations were ratified by the Burlington County Prosecutor's Office are insufficient to overcome the presumption advanced by Plaintiff.  Indeed, the Third Circuit has stated that " [t]he mere fact of investigation for the sake of investigation does not fulfill a city's obligation to its citizens.  […] Whether those procedures had substance is for the jury's consideration." Beck 89 F.3d at 974.

　　Despite the outcome of the internal affairs investigations and that one of the civilian complaints had been abandoned, the fact that Officer Vacanti was the subject of two civilian complaints in such a short period of time, at the very least, constitutes a genuine issue as to whether the policy maker should have known of Officer Vacanti's propensity for violence and failed to adequately train him. See id.  In addition, it is for

9

the jury to decide whether the internal affairs investigation was done with integrity, or was a police rubber stamp. Beck 89 F.3d at 974

Moreover, in light of the Court's previous determinations on Plaintiff's cross motions to strike, the only submission of Riverside Township in support of its summary judgment motion is a training record for Officer Vacanti. This evidence merely confirms that Officer Vacanti attended certain training classes; the title of the classes provides the only insight into the nature of the training. It is impossible for the Court to glean from this offer of proof whether Officer Vacanti received adequate training, or training directed at his alleged propensity for excessive use of force. For these reasons, the Court cannot find as a matter of law that Riverside Township is not liable under Monell. On the record before the Court, a reasonable jury could conclude that Riverside Township was on notice for the need for additional training for Officer Vacanti and that it acquiesced and/or was deliberately indifferent to the custom permeating its police department. The causal element, namely whether the custom contributed to Plaintiff's injuries, is for the jury's consideration. A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.2d 572, 582 (2004)("Once evidentiary proof is adduced, the issue of proximate cause is best left to the trier of fact.") As a result, summary judgment as to this count is denied.

2. **Plaintiff's Claims of Negligence, False Arrest/False Imprisonment and Malicious Prosecution**

Summary Judgment is denied as to Plaintiff's claims of false imprisonment, malicious prosecution, and negligence. The New Jersey Tort Claims Act, N.J.S.A. 59:2-2

permits these claims to go forward upon a showing that Officer Vacanti was acting within the scope of his employment and without "wilful misconduct" when he arrested Plaintiff.  N.J.Stat.Ann. §§ 59:2-2a-10.  There is no dispute that Officer Vacanti was acting within the scope of his employment when he arrested Plaintiff.  Thus, the issue is whether Officer Vacanti's actions constituted "wilful misconduct".

Defendant Riverside Township claims that because Plaintiff has characterized, both in his brief and in the Complaint, Officer Vacanti's actions as criminal and deliberate, Plaintiff should not be allowed to re-characterize those allegations to fit within the rubric of the New Jersey Tort Claims Act.  Defendant's argument is flawed for two reasons.  First, Fed.R.Civ.P. 8(c)(2) permits a Plaintiff to pursue alternate and conflicting theories of liability. See, e.g., Adams v. City of Camden, 461 F.Supp.2d 263, 270 (D.N.J. 2006)(Where complaint alleged unlawful behavior on the part of police officer, court concluded that a liberal reading of the complaint precluded summary judgment as to the city under the New Jersey Tort Claims Act because actions of the police officer "could fall somewhere in the zone between good faith and wilful misconduct.")  In addition, the issue of whether Officer Vacanti's conduct constitutes "wilful misconduct" involves credibility determinations and consideration of Officer Vacanti's state of mind during the incident.  These considerations are for the fact-finder, precluding summary judgment as to this count.

**F. Qualified Immunity under 28 U.S.C. § 1983–Officer Vacanti**

In relevant part, 42 U.S.C. § 1983 provides that a person acting under "the color of law" who deprives a citizen of rights, privileges, or immunities guaranteed by the Constitution and laws of the United States is subject to liability.  Qualified immunity is

11

an affirmative defense for government officials to § 1983 claims.  Schneider v. Simonini, 749 A.2d 336, 345 (N.J. 2000) (citing Gomez v. Toledo, 446 U.S. 635, 640-41 (1980)).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Saucier, 533 U.S. at 201 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id.

Qualified immunity is a question of law determined by the Court, and when that determination depends on disputed issues of fact, those facts must be determined by a jury.  Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).  The threshold question in a qualified immunity inquiry is: "taken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If there would be no violation of a constitutional right under the facts alleged, the Court's inquiry ceases.  Id.  However, if the facts alleged make out a violation, the Court must ask whether the right was clearly established; in other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 201-202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

### *1) Was a constitutional right violated?*

Plaintiff alleges a violation of the Fourth and Fourteenth Amendments to the Constitution.  (Compl. at ¶5.)  Where an amendment provides explicit protection against a particular kind of government action, that amendment is the source of the Court's evaluation of a § 1983 claim rather than the general rights granted by the Fourteenth

Amendment.  County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)).  Thus, allegations of false arrest or false imprisonment are evaluated under the Fourth Amendment rather than the Fourteenth Amendment.  See, e.g., United States v. Lanier, 520 U.S. 259, 272 (1997); Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000).

> The Fourth Amendment provides:
>
> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, support by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

While mistakes will invariably happen, the Fourth Amendment guarantees that mistakes will only be made after proper diligence and regard for our notions of liberty and justice is accorded.  Thus, taking the facts in a light most favorable to the Plaintiff, the facts alleged make out a constitutional violation.

However, a police officer can defend a § 1983 claim by establishing: (1) that he or she acted with probable cause; or, (2) if probable cause did not exist, that a reasonable police officer could have believed it existed.  Kirk v. City of Newark, 536 A.2d 229, 234 (N.J. 1988) (citing Anderson, 483 U.S. at 663-64).

Probable cause exists where "'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Schneider, 749 A.2d at 349-50 (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).  When considering whether probable

cause exists, the Court must look at the "totality of the circumstances." Id. at 350 (citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983)). Probable cause is less than proof needed to convict, but more than mere suspicion. Id.

Although the Court should not look upon the actions of an officer with the benefit of hindsight, see Saucier, 533 U.S. at 205, the Court should critically examine the circumstances the officer faced, particularly where a fundamental right is implicated. Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley, 475 U.S. at 343). However, "mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." Schneider, 749 A.2d at 350; see also Orsatti v. NJ State Police, 71 F.3d 480, 483 (3d Cir. 1995) (holding officers only lose qualified immunity where clear indicia that probable cause unreasonable). Under New Jersey law, the standard for judging whether an officer had a reasonable belief in the existence of probable cause, even where it did not in fact exist, is objective reasonableness. Id. at 358.

In his police report, Vacanti contends that Plaintiff was kneeling against a car that was illegally parked. After waiting a few minutes for the vehicle to rectify the illegal parking situation, Plaintiff, in "abrasive, very loud language in a residential area" yelled toward the police vehicle that "[t]hese cops are fucking assholes. If he pulls me over here I'll take care of him. Let me talk to this asshole." As he yelled, Plaintiff was flailing his arms toward the police officer. The report notes at this point that Officer Vacanti was unable to see Plaintiff's right hand. As he exited the vehicle, Officer Vacanti instructed Plaintiff six times to stand up, to which Plaintiff responded "[n]o fucking

way".   Plaintiff's non-compliance prompted Officer Vacanti to advise him that he was under arrest, at which point Plaintiff, in close proximity to him, yelled "[t]he fuck I am".

After refusing to go back to the police cruiser, Plaintiff was warned that Vacanti would "assist" him if he did not comply and that he would be resisting arrest.  Vacanti grabbed Plaintiff and the two struggled as Vacanti attempted to handcuff Plaintiff.  Although Plaintiff remained uncooperative, he was placed in the police cruiser and Vacanti started to approach the Lallos' vehicle to address the illegal parking situation.  As he walked away from the cruiser, Plaintiff continued to yell at Vacanti, stating that he would "bury" him, which Vacanti asserts constituted violence directed at a police officer.  Plaintiff's behavior did not improve after they entered the police lockup.  During an attempt to handcuff Plaintiff to the cell bench, Plaintiff resisted and Officer Vacanti suffered a cut on his right middle finger "that bled for a short while"; this is the basis for the aggravated assault on a police officer charge against Plaintiff.

Under New Jersey law, disorderly conduct[4] for improper behavior is governed by N.J.S.A. 2c:33-2(a):

> a person is guilty of a petty disorderly persons offense, if with

---

[4]Disorderly conduct for abusive language, which was alleged in the police report but not charged specifically, is governed by N.J. Stat. Ann. § 2C:33-2b:

> A person is guilty of a petty disorderly persons offense if, in a public place, and with purpose to offend the sensibilities of a hearer or in a reckless disregard of the probability of so doing, he addresses unreasonably loud and offensively coarse or abusive language, given the circumstances of the person present and the setting of the utterance, to any person present.

Id.  Importantly, Section 2b has been held unconstitutional for "over-breadth" unless the  language would incite the hearer to immediate violence. In re H.D., 206 N.J.Super. 58, 61 (App.Div.1985).

> purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he (1) Engages in fighting or threatening, or in a violent or tumultuous behavior; or (2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor.

In <u>State v. Stampone</u>, a charge of disorderly conduct was unfounded where a defendant slammed a car door, almost hitting a police officer. The conduct was construed as not being tumultuous, threatening, fighting, or otherwise violent. 341 N.J.Super 247 (App.Div. 2001). However, under proper circumstances, the conduct could be construed as obstruction. <u>Id</u>.

In relevant part, a person commits obstruction of law "if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a)(2000). Under New Jersey law, a person can be found to be obstructing "even though a judge may later determine the stop was unsupported by reasonable and articulable suspicion." <u>State v. Crawley</u>, 187 N.J. 440, 458, 901 A.2d 924, cert. denied, --- U.S. ----, 127 S.Ct. 740, 166 L.Ed.2d 563 (2006). "Under New Jersey's obstruction statute, when a police officer commands a person to stop, [. . .] that person has no right to take flight or otherwise obstruct the officer in the performance of his duty." <u>State v. Williams</u>, 192 N.J. 1, 11, 926 A.2d 340, 346 (2007)(citing <u>Crawley</u> at 451, 458-59, 901 A.2d 924).

Viewing the facts as set forth by Officer Vacanti, it is possible that probable cause existed to arrest plaintiff on obstruction charges and possibly for disorderly conduct.

16

However, the Court is required to view the facts in a light most favorable to Plaintiff, which in this case, essentially means, adopting the version set forth by Plaintiff. See Scott v. Harris, _ U.S. _, 127 S.Ct. 1769, 1775 (2007). Given that the underlying historical facts of this case are in dispute, it is not possible for the Court to determine whether probable cause existed or whether Officer Vacanti had a reasonable belief in the existence of probable cause at this time. See Monteriro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006)("[a]lthough qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by a jury.") The facts set forth by Plaintiff, in addition to statements and testimony of the Lallos, albeit at times inconsistent, suggests that probable cause was lacking to arrest Plaintiff.

### *2) Was the right sufficiently clear?*

The second inquiry under qualified immunity is if a constitutional right was violated, was the right sufficiently clear? Saucier, 533 U.S. at 201-202. The New Jersey Supreme Court has held that under the United States and New Jersey Constitutions, the law of probable cause was clearly established by January 1981. Schneider, 749 A.2d at 350. Plaintiff's right to be free from seizure without probable cause was established as a matter of law on March 3, 2002. Therefore, at this juncture, Officer Vacanti is not entitled to qualified immunity.

**F. False Imprisonment**

Under the Fourth Amendment, a person is seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 574 (1988) (quoting

United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  Seizure occurs only when a person is detained by "means intentionally applied" to terminate his freedom of movement by means of physical force or by show of authority.  Brower v. County of Inyo, 489 U.S. 593, 597-98 (1989).  No seizure occurs when a reasonable person would feel free to "disregard the police and go about his business" or where "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."  United States v. Kim, 27 F.3d 947, 951 (3d Cir. 1994) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Under New Jersey common law, the tort of false imprisonment is defined as when an actor improperly constrains a person's freedom of movement by force or by threats of force communicated through conduct or words.  Maietta v. USPS, 749 F. Supp. 1344, 1366 (D.N.J. 1990).  New Jersey requires two elements for false imprisonment: (1) detention of the person against his or her will, and (2) a lack of proper legal authority or "legal justification".  Mesgleski v. Oraboni, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000).

Taking the facts in a light most favorable to the Plaintiff, he was seized and falsely imprisoned under either of the above standards. Summary judgment is denied as to this count.

**G. Assault and Battery Claims**

Under New Jersey law, an assault is an attempt or offer to touch or strike the person of another with lawful force.  See Model Civil Charge, 3.10 (citing State v. Maier, 13 N.J. 235 (1953)(other citations omitted)).  A battery is the actual touching or striking

of another person. Defendant claims immunity from liability pursuant to the New Jersey Tort Claims Act, N.J.S.A. 58:3-3, which provides: "A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

Here, there are genuine issues of fact regarding Officer Vacanti's motive and state of mind precluding judgment as a matter of law as to this claim.

**H. Malicious Prosecution**

To establish malicious prosecution under § 1983, a Plaintiff must establish that: (1) the defendants initiated a criminal proceeding; (2) which resulted in a seizure; (3) the criminal prosecution resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause and (5) the defendant acts maliciously or for a purpose other than bringing the plaintiff to justice. Santiago v. City of Vineland, 107 F. Supp. 2d 512, 566 (D.N.J. 2000). Under New Jersey law, for a successful claim of malicious prosecution, a plaintiff must demonstrate: 1) that the criminal action was instituted by the defendant against the plaintiff, 2) that it was actuated by malice, 3) that there was an absence of probable cause for the proceeding, and 4) that it was terminated favorably to the plaintiff. Helmy v. City of Jersey City, 178 N.J. 183 (2003)(citations omitted).

There are genuine issues of material fact, regarding the existence of probable cause and the Defendant's state of mind, precluding judgment as a matter of law as to this count.

**I. Claims for Punitive Damages**

Under federal law, punitive damages will only be awarded in § 1983 cases upon a showing that the defendant acted with a malicious intent or evil motive, or where the defendant acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." Smith v. Wade, 461 U.S. 30 (1983).  For the reasons set forth on the record during oral argument, Plaintiff's claim for punitive damages is dismissed without prejudice and may be reasserted upon development of testimony consistent with Smith v. Wade, 461 U.S. 30.

An appropriate Order will follow.

Dated: November 26, 2007

                                           /s/ Joseph H. Rodriguez
                                          JOSEPH H. RODRIGUEZ,
                                          United States District Judge